171174 Scott Saunders v. Town of Hull Good morning. Thank you. May it please the court, my name is Harold Lichten. I have the pleasure of representing Scott Saunders. I would like to reserve one minute of rebuttal. You may. Your honors, there are three ways you could find error in the lower court's dismissal of the whistleblower claim in this case, without having to address what I believe is really the 800-pound gorilla in the room, and that's whether this court's decision in Durain was wrongly decided or not, and I do believe it was and requires certification to our Supreme Judicial Court. But you could find, in order to distinguish Durain, one of the following three things. You could find that unlike in Durain, because Mr. Saunders went to the Attorney General about embezzlement in the police department, that the exception in C1 for criminal activity eliminated his requirement of giving notice before filing suit in federal court. Didn't the district court find that that claim was made belatedly at the motion for reconsideration and basically it was too little too late? No, I think not. I think you're referring to the question of whether we claim that there was notice in any event. We had always claimed that exception, that the criminal exception applied here and therefore we required no notice. The second argument we could make is that he did not have to give written notice. I'm sorry, that he had to give written notice and he did give written notice under the statute when, one, he drew up a letter of no confidence on behalf of the union and gave it to the union rep who gave it to the town, thereby constituting the notice that the court said was absent. And when he provided bank records and other documents to the town manager and the chief, which we consider to be the written notice of the possible embezzlement of funds. I think that, Justice Lynch, is what you're referring to. We only raised on reconsideration. And thirdly, you could decide that when Mr. Saunders wrote the letter of no confidence and gave it to the union official who in turn gave it to the town manager, he was in a sense objecting to activity which he believed was illegal in the police department. We've delineated what those objections were to financial mismanagement, having to write parking tickets on a mandatory system that was illegal under SJC decision of utilizing money improperly for his own personal use and therefore he was making an objection which under B3 of the statute doesn't require notice at all. But I don't think that's what you should do in this case because I think when fairly looked at, there is a serious question as to whether Durain was correctly decided. I think the proper course here is to certify to the SJC. I would point out that in the Durain decision itself, Justice Boudin said, and I quote, the statute is complicated and in certain respects unclear, but neither side has asked for certification and we have no intention of further prolonging this litigation, suggesting that he himself wasn't clear on what the statute's proper interpretation was with respect to the notice provision. Then in Quazdai that was decided four years later, the appeals court of Massachusetts in footnote 4 said that because we find the notice requirement inapplicable to section B3, that's the section that doesn't require notice, quote, we have no occasion to opine on the correctness of the Durain court's reasoning, end quote. I think that's a clear indication that the appeals court was concerned with whether Durain was correctly decided or not. And then in Wagner versus the city of Holyoke, Justice Ponser said, and I quote, the First Circuit's parsing of the whistleblower statute in Durain is troubling. A strong argument could be made that the statute requires only oral or written notification to the employer of the misconduct prior to the disclosure to the outside body. Even this notification is not required if an exception applied. While the most generous construction of the notice provision has its attractions, that's the one I just stated, the Durain approach is not without support. So just Ponser clearly after looking at this in detail was concerned with the Durain decision. And finally, in Bennett versus city of Holyoke, this court said, although the Durain interpretation is certainly not the only plausible reading of the statutory language, it did not contradict any previous binding precedent. Counsel, it could well be that there are distinctions between a B-1 claim and a B-3 claim, and the state appeals court certainly suggested that. You didn't, in your pleadings, ever identify your various claims by reference to B-1 or B-3. Correct. And I believe the argument as to the notice to the AG, you're claiming it was B-3, was belated. Yes, I conceded that. And the district court said, well, sorry, it comes too late. So if the district court is right about that, and that may be your best claim, that you went to the attorney general. There's no letter. Apparently it was a series of oral communications. Why should we get into these issues? Your Honor, I don't think that's correct. We had always claimed that when he went to the attorney general's office and met with the attorney general's office and provided clear evidence of a crime, it turned out there was a huge embezzlement, and there was reason to believe that the chief was involved since he had signed some of the checks, that that constituted an exception to the notice requirement that's in C-1. That's always been our claim, and that was our claim from day one, and it's in our briefs. What the court found, and I think it's correct, is that with respect to whether notice, that exception doesn't apply, and therefore notice is required whether in that situation we had brought up the embezzlement. Now our position all along had been that he also wrote this letter of no confidence that contained similar allegations, and it's always been our position that that constituted the notice under the statute if notice was required under B-1, and that it was an objection under B-3, therefore no notice was required. So we never gave that up. An example, and when one gets to the, when one tries to parse out the statute and thinks about what the legislature would have intended, when you think about it, it makes no sense what the drain holding is that after bringing to the attention of officials issues, especially criminal conduct issues, how it would make any sense that you have to then bring it again to the attention of the official before filing suit, because there's nothing that the town officials could have done to correct the practice, and the obvious purpose of notice is to give them one last opportunity, but if it's criminal activity, the town can't absolve the chief from a criminal violation of law, so it makes no sense to require the notice, and that's why the C-1 exception applies. Could you help us with, there's an issue that seems to be just below the surface in the breeze. Assume you're okay on the notice requirement, right? Assume you get by that. On the 1983 claim, you ran into a problem because you've got the Manel and you've got the lack of vicarious liability, so you need to, the parties on the whistleblower brief, neither side comes out and expressly says whether you can have vicarious liability for the town because the chief retaliated. Is the Massachusetts law like the 1983, or can you have vicarious liability for the employer? With respect to the whistleblower statute, I believe it's clear you can have vicarious liability. I think that's what Welch v. Chiampa, a case I was involved in, says. I think that's what the other cases say because towns only act by their police chiefs, their fire chiefs, the people. Mr. Lichten, aren't there two exceptions? One is for discretionary acts and the other is for intentional acts. I don't think so. I don't think under the whistleblower statute. I don't think Massachusetts has ever created such an exception under the whistleblower statute. I thought it was conceded by the parties that those exceptions would apply here. I mean, the accusation is precisely that the police chief acted intentionally in violation of law. Yes. And it's quite clear this is discretionary. I just don't see that if it was discretionary whether to recommend Mr. Saunders for promotion or to take away the things that he did, that that in any way would absolve him from liability under the whistleblower statute. I'm sorry. So you're saying the whistleblower statute changes the common law? It changes. I think the law in Massachusetts does not recognize any discretionary exception. I think what you're referring to is that under the 1983 claim. No, I am not. I am referring to Massachusetts state law. I know of no such decisional law that states that. If I'm understanding your argument, the whistleblower statute imposes liability on the employer for retaliating. And as I understand your point here this morning, how can the employer retaliate other than through one of its officials? That's correct. That's exactly right. But we need to ask whether that official had responsibility in charging here at the police chief. Well, there's no question that the police chief was in charge of making final recommendations on whether to promote. I would like to spend just one second saying. Your time is up. Okay. I'll rely on my brief what we say with respect to the 1983 claim and why that should also be reversed. Thank you. Thank you. Mr. Podolsky, good morning. Good morning, Your Honors. May it please the Court, Joseph Podolsky for the defendant, Town of Hull. Your Honors, I'd like to answer a few of the questions that were raised a second ago. The first is as to vicarious liability. The whistleblower statute is not a vicarious liability statute. It is a statute that is, it enacts a private right of action for employees against employers for practices and policies, not one specific incident necessarily. Well, it says activity as well. Activities as well, but the case law suggests that it's a pattern of activities. I'm sorry. And under the Mass Tort Claim Act, if you want to impose vicarious liability, there are the two exceptions. Yes, Your Honor. And I think that's a different statute, but I think that's what you're referring to. Yes. Under Chapter 258. So the whistleblower statute, it has enormous remedies, and for a reason. And those remedies are against the employer. It's not just the money damages statute, like, for example, a First Amendment retaliation claim against one particular individual, perhaps the chief of police, which was one of the claims in the underlying suit. The whistleblower statute contains equitable relief. The courts can order the person back to the same position or an equivalent position. These functions are not functions of compensatory relief. These are functions that are imposed upon employers for practices of employers that employers are aware of. Hence, the notice of provision of the statute. This applies specifically to governmental entities. Correct. And it says that they can be liable if they retaliate for certain things, and it defines retaliation as taking adverse employment action against the employee. You want us to say that if the chief of police takes retaliatory adverse employment action against an officer under his control because he has done one of the things that the statute has defined to protect, the statute doesn't apply unless the board of selectmen are involved? Not necessarily, Your Honor. So where would it be liable? Give me an example of how you would find liability under this statute. Well, Welch v. Chimp is a perfect example of that. The chief in that case had the authority, the policymaking authority, the final authority on the assignment of specials, I believe, was the issue in the case, and the plaintiff in that case was removed from his specialist position. And didn't the chief here have the authority to make the key recommendation as to whether someone be promoted or not? I disagree, Your Honor. I think that calling that authority is not consistent with the statute. Well, wouldn't we want to align up authority with what we would define to be the adverse employment action? So if we were to think that the failure to recommend someone for a position, a supervisor's decision not to recommend was an adverse employment action, then it would be odd to turn around and say that type of thing isn't a retaliatory action of the employer. I think I understand what Your Honor is suggesting, but I think stretching the definition of recommendation to meet authority is not consistent with the whistleblower statute. And specifically in this record, as cited in the briefs, that that's not what happened. The plaintiff continuously and conclusively suggests that the chief conspicuously did not make a recommendation as to the second sergeant's vacancy. Well, the Board of Selectmen's, the appointing authority, they requisitioned a list under Chapter 31 of the Civil Service Statute for Sergeant Greg Shea's vacancy, or the vacancy that was created by his resignation. The record of this case shows that the process that was undertaken by the town and the review process that the chief administered for Lepreau and Saunders was specifically for that vacancy. And the letter, the only communication in the record that the plaintiff is aware of between the former chief and the board, or really any member of the town on this subject matter, the letter of the chief is glowing when it comes to the plaintiff. So are you saying in a nutshell that we can skip all these issues, that under Rule 56 there's no basis for a jury to find that the chief took retaliatory action? I don't believe that was the finding of the lower court. That was as it related to the First Amendment retaliation claim. But that's precisely the point of the notice requirement of the whistleblower statute. It's a claim against employers. And employers are entitled to notice when these types of allegations are being made. And this is what is said to be happening in their house, colloquially put. Your Honor, to address the plaintiff's two counts, there's the whistleblower claim and the First Amendment claim against the town specifically. The first count, the whistleblower claim, whether you split it into three separate issues or one issue can be resolved the same way. Durain and the two Wagner decisions are dispositive on this particular matter. The plaintiff doesn't suggest that the case should be certified to the SJC because there is no controlling precedent and we don't want the federal courts to speculate as to what the Massachusetts Supreme Judicial Court might do. Go ahead. The district court also found waiver of certain arguments. And if we affirm that, we would not necessarily adopt your view that Durain takes care of all of this. Agreed? I agree. All right. So what is it the district court found was waived? I would agree with my brother. I think that the plaintiff's claim initially was only a 185 claim, didn't specify whether it was a B1 or a B3 claim. It was prosecuted in the lower court as a B1 claim, a disclosure claim, not a claim that the plaintiff went to the Attorney General's, or the state police really, to disclose a crime, but was some bootstrapped version of the union's letter and the plaintiff claiming that it was his speech that was in that letter and that the town was aware more specifically that it was his speech that was in that letter. And the attempt to convert the Attorney General's letter to a B3 claim, the district court said it's just too late. It did, Your Honor, but it doesn't even necessarily matter because Wagner, Durain was issued, I believe Durain was issued correctly for a multitude of reasons. It was issued in 2002. There were multiple First Circuit cases that dealt directly with this issue, all of which the plaintiff's counsel asked for certification to the SJC. Wagner happened to be one of them. In Wagner, Judge Ponser specifically expressed four scenarios that the whistleblower case applied to, the third of which very directly applies to this case. It's going to the Attorney General to report misconduct. That activity in and of itself, the plaintiff wasn't required to go to his chief and say, hey, chief, I'm going to the state police to report this crime. But as it relates to the employer, the plaintiff was required, and Wagner makes clear that that's the interpretation, was required to go to the employer and say to the employer, hey, employer, there may be crime happening, and I believe it's a practice of the employer, and I need to provide you with a reasonable opportunity to cure that issue. That never happened in this case. But the point I'm making is that that was the Judge Ponser's decision. This court affirmed that decision. No certification was made. The issue was re-raised in Welch. No certification was made in that case. And Quasi came out in 2007 as an appeals court case. The plaintiff suggested in his briefs and here before the court that there was, that there is a stark difference between the Quasi decision and Durain. There wasn't. Do you read Durain as saying that before you bring a whistleblower action in court, if the underlying activity is a B1 activity, you must give written notice before going to court, even if the going to court isn't the whistleblowing activity for which you're seeking protection, but rather it was a prior blowing of the whistle for which you're seeking protection? If it's going to a law enforcement agency to report a crime, then yes. And I believe that Wagner, both the district court and this court, affirmed that reading. But where do you get that out of the language of the statute? It seems to say certain things are protected, but then the protection won't apply to a subset of those. And nothing says that there's an obligation to give notice before you bring suit. So Section C2 is what I believe Your Honor is referring to. It states that there's no obligation to go to the employer before going to a law enforcement agency to report a crime. Your Honor, if I may, Your Honor, this issue did arise in Durain. I mean, the plaintiff did go to a law enforcement agency to report a crime, falsifying fingerprint records. The law enforcement agency happened to be the Brookline Police Department and not the state police, but it was the same issue. That part of the act is something that the employee does not need to provide notice for. But if the employee is to bring a claim against the employer under the whistleblower statute, then the employee must provide notice before going to court and bringing that claim. If I could address- Your time is up. Thank you, Your Honor. We'll take another brief. Very briefly, Judge Gordon found that the causation question had to go to a jurist, and that is a finding which I think should be binding on this Court. He found there were sufficient facts in the record from which a jury could find that a promotion was denied because of this protected activity. And he found that with respect to the Chief, and the same analysis would apply. Causation is causation. Secondly- I'm sorry, on which of your various theories did Judge Gordon specify on that? That was on the First Amendment claim against the police chief. Then what does it have to do with the whistleblower claim? I'm just going to get to that, Your Honor. Causation is causation. If there's enough evidence in the record to show that an adverse action was taken because of certain conduct, it's the same conduct in both cases, the causation analysis would apply. There's no difference in the summary judgment standard. Secondly, with respect to this waiver issue, I just want to make clear what the record actually shows. There was no waiver issue, and Judge Gordon found no waiver issue with respect to the B-1 so-called embezzlement claim. He agreed that that was in the record and had always been pled. He did find that with respect to the B-3 claim, that we had only alleged that the letter of no confidence constitute the ejecting behavior, not the embezzlement, so I agree that we're stuck with that. But with respect to the B-3 letter of no confidence, he did say that that had not been waived, and that that letter did permit us to claim that there was no notice required at all because B-3 doesn't require notice. So there was only waiver on one small part of it, not on the majority of it. And finally, Your Honor, I just want to make clear that there is ample support in the record for the proposition that despite his sterling credentials, the fact that he was highly regarded by the panel that interviewed him, the fact that there was a vacancy that was fully funded and open, a decision was made not to promote him. I know that's not as easy as an affirmative decision saying we're going to promote this guy instead, but no promotion was made and they let it go vacant and using acting sergeants, and there's a good inference that that was because they were so upset with him for both the letter of no confidence that he wrote and his blowing the whistle on the Chief's possible embezzlement of significant union funds. Thank you. Thank you.